Adella PUGH, Plaintiff,

v.

Walter C. HEINRICH, etc., Defendant.

No. 85–496–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 12, 1988.

534

Adella Pugh, Tampa, Fla., pro se.

David Rodriquez, Tampa, Fla., and James Sweeting, III, Sanford, Fla., for plaintiff.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzales, and Paul J. Marino, Legal Advisor, Tampa, Fla., for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's motion for summary judgment, filed March 25, 1988; response to motion for summary judgment, filed May 13, 1988; and court-ordered joint memoranda, filed July 13 and August 10, 1988.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.' " *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed. 2d at p. 274.

A complaint was filed in this cause July 26, 1985, and was amended April 27, 1987. The amended complaint asserts the following: Count I) violation of 42 U.S.C. § 1981, Count II) violation of 42 U.S.C. §§ 2000–e, *et seq.*, and Count III) request for attorney's fees pursuant to 42 U.S.C. § 1988.

Plaintiff has asserted twelve articulated incidents of discrimination pertaining to her charges of discriminatory treatment, constructive discharge, and existence of a racially hostile working environment (Ex. 1, motion for summary judgment):

1. Plaintiff was transferred to a substation approximately 21 miles from her home because of an altercation initiated by Cindy Ryals, caucasian, who was transferred to a substation close to her home.

2. Plaintiff was transferred to the night shift when she had more seniority than other caucasian C.S.O.'s who picked the shifts they wanted.

3. Plaintiff was transferred to the District II Station in Brandon, Florida even though she had more seniority than caucasian C.S.O.s.

4. Plaintiff was denied use of a county car to travel the District II Station in Brandon, while Mr. Steve Smith, caucasian, was given a take home car after being employed for less than six months.

5. Lesser qualified caucasians were selected for deputy positions, while Plaintiff applied for a deputy position every academy session from February, 1982, through September, 1983.

6. Lesser qualified caucasians were selected for detective training, while Plaintiff was overlooked.

7. Around April 1983, Plaintiff was denied an opportunity to make up sick days (two), while caucasian employees were afforded the opportunity.

8. In July 1983, Lt. Myers instructed Plaintiff to bring in a doctor's statement if absent before or after scheduled days off, while caucasian C.S.O.s who were absent (some intentionally) before or after scheduled days off did not have to provide statements.

9. In September 1983, Plaintiff was denied a request to take off from work four hours on three different Saturdays in order to take Spanish classes. Ms. J. Walker called in sick almost every weekend; however arrangements were made.

10. Around April or May 1982, Plaintiff was required to submit a memo by Sgt. King regarding being five minutes late to work, while caucasians who were late on numerous occasions were not required to submit a memo.

11. On August 4, 1983, Plaintiff received a disciplinary notice report for neglect, absent without leave, and failure to give proper notice; however, Ms. Valerie Perez was absent in February 1983, failed to call in, and no disciplinary action was taken.

12. Plaintiff complained frequently to her supervisors about the work environment which resulted from the aforementioned conditions; however, no effort was undertaken to alleviate the above-referenced conditions. The lack of intervention by supervisory personnel, including that of Defendant, encouraged the racially discriminatory conduct to continue and intensify.

The parties in their joint memorandum of law state the following undisputed issues of fact:

1. Adella Pugh, Plaintiff, was employed by Defendant on or about December 16, 1981, as a Community Service Officer (C.S.O.).

2. Plaintiff is a black female, citizen of the United States and a resident of Hillsborough County, Florida.

3. Plaintiff was continuously employed as a C.S.O. until September 23, 1983. On that date, Plaintiff's rate of pay was $5.14 per hour.

4. A C.S.O. performs various clerical and support functions for the Hillsborough County Sheriffs Office (Sheriff's Office) and for Walter C. Heinrich, Sheriff.

5. A C.S.O. is not an entry level sheriff's deputy position. Most deputy sheriffs have never been a C.S.O.

6. The Sheriff's Office policy mandates that staffing requirements take precedence over requests for educational time off. During the period of Plaintiff's request to take time off for Spanish classes, she was the only C.S.O. scheduled for duty on Saturdays at the Brandon station. Plaintiff requested time off after the scheduling was determined.

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on October 13, 1983.

8. After investigation of the charge, the EEOC issued a no-cause determination, finding no basis for Plaintiff's allegations of racial and sexual discrimination.

9. That Exhibit 1 to the joint memorandum filed August 10, 1988, represents undisputed facts. Exhibit 1 consists of the affidavits of Albert L. Perotti, Jr., records custodian of the patrol department of the Sheriff's Office and David M. Parrish, records custodian of the detention department, representing personnel statistics regarding promotion of sworn law enforcement personnel for the time period January 1, 1982, through December 1, 1985, and, a chart showing percentage of minority employees.

10. Mr. Perotti's affidavit shows the following promotions for the patrol department during this time period: 1) white male—68, 2) white female—13, 3) hispanic male—13, 4) hispanic female—3, 5) black male—4, and 6) black female—3. As to the detention department the promotions were: 1) white male—48, 2) white female—15, 3) hispanic male—9, 4) hispanic female—2, 4) black male—5, and 6) black female—6.

11. The chart show the following percentages for black employees and female employees:

|  |  | female | black |
|---|---|---|---|
| October 1980: |  |  |  |
| a. | certified law enforcement personnel | 8% | 7% |
| b. | certified correctional personnel | 10% | 16% |
| c. | non-certified personnel | 51% | 8% |
| December 1981: |  |  |  |
| a. | same as above | 8% | 8% |
| b. | same as above | n/a | n/a |
| c. | same as above | n/a | n/a |
| December 1982: |  |  |  |
| a. | same as above | 9% | 7% |
| b. | same as above | 21% | 14% |
| c. | same as above | n/a | n/a |
| December 1983: |  |  |  |
| a. | same as above | 9% | 7% |
| b. | same as above | 12% | 14% |
| c. | same as above | n/a | n/a |
| December 1984: |  |  |  |
| a. | same as above | 10% | 7% |
| b. | same as above | 14% | 14% |
| c. | same as above | 68% | 12% |
| December 1985: |  |  |  |
| a. | same as above | 10% | 8% |
| b. | same as above | 17% | 16% |
| c. | same as above | 61% | 11% |
| December 1986: |  |  |  |
| a. | same as above | 10% | 9% |
| b. | same as above | 21% | 15% |
| c. | same as above | 61% | 13% |
| December 1987: |  |  |  |
| a. | same as above | 11% | 9% |
| b. | same as above | 20% | 15% |
| c. | same as above | 61% | 12% |

The following findings of fact are based on the evidence submitted in support or opposition to the motion for summary judgment:

12. After Plaintiff's first year of employment, she received a written evaluation from Corporal R.T. Schoenborn. (Ex. 2). The evaluation form stated: 1) a rating of 95 or above means a consistently outstanding performance, 2) 83–94 means excellent or better than average, 3) 70–82 means adequate performance, and 69 or below means employee must improve substandard performance for continued performance. Plaintiff received the following evaluation:

a. Quantity (amount of work produced in usable form, completion of work on schedule, skill in handling special assignments)–75

b. Quality (accuracy, thoroughness, neatness, etc.)–80

c. Attitude (cooperation, dependability, etc.)–75

d. Work habits (regularity of attendance, punctuality or tardiness, etc.)–80

e. Over-all performance–77 (adequate performance).

13. Defendant has submitted employment record excerpts in support of the motion for summary judgment. In conjunction with other testimony and documentary evidence, the Court makes the following findings of fact regarding Plaintiff's employment history:

a. For the period from December 16, 1981, through August, 1983, Plaintiff failed to report to work on 33 days, 23 were reported as sick days and 10 were taken as leave without pay. Seventeen of the 33 days of absence were taken either in conjunction with regularly scheduled days off or a holiday. Sgt. King counseled Plaintiff as to her use of sick leave on June 9, 1983. (Ex. 3). Plaintiff asserts that she has doctor's statements for each day off she took and that she was treated differently from the caucasians in regard to sick leave.

b. On March 11, 1982, Plaintiff and Cindy Ryals, caucasian C.S.O., became embroiled in a verbal argument. At one point a deputy felt compelled to intervene because he thought the possibility if physical confrontation existed. Both employees received written reprimands and where warned that similar conduct in the future could result in dismissal. The two employees never resolved their problems and the arguments continued.

c. Plaintiff and Ms. Ryals were transferred to substations. Plaintiff was assigned to the Brandon substation. Ms. Ryals to the Town n' Country substation. Plaintiff in her deposition asserts that although Ms. Ryals was initially assigned to that substation, she did not ever actually go there because she stated she refused to work with the "nigger" who was also employed there. Defendant contends the transfers were not intended to be disciplinary actions, but were undertaken for the expedience of separating Plaintiff and Ms. Ryals and coincided with the opening of the two substations for seven days a week, instead of five. (Ex. 4(a)–(c), Plaintiff depo., 10–8–85, pgs. 41–44).

d. On July 13, 1983, Plaintiff initiated an shift change with a co-worker from evening shift to day shift. Allegedly Plaintiff told the co-worker the shift change had been approved by Lt. Myers. Lt. Myers stated he had not given such approval, but had told Plaintiff that he would have to check with other employee and the change would have to be announced in memos to all divisions. Since Plaintiff reported to work on the day shift on the 14th, she was told to finish that shift but to return to the evening shift the following day. Plaintiff, however, went home sick that day and on the 14th had one of her children call in sick for her. Plaintiff received a written reprimand from Captain Terry, for violation of Sheriff's Office General Order, Section VII, No. 4 (neglect of duty) and Civil Service Rule 11.3, Section B, No. 6 (absent without leave or failure to give proper notice of absence to detriment of service) and was advised a reoccurrence could result in a suspension. (Exs. 5(a) and (b) and 6).

e. On July 21, 1983, Sgt. Bryant wrote a memo to Sgt. King regarding Plaintiff's protesting assignment to an assigned area of District II, Brandon. (Ex. 7). Plaintiff asserts that the caucasian employees were not restricted in the area they were able to patrol.

f. On August 2, 1983, Plaintiff received a written warning from Sgt. King regarding her refusal to assist a deputy in a copying assignment. Plaintiff allegedly told the deputy that C.S.Os were excused, by Sgt. King, from that activity. Sgt. King informed Plaintiff that she was incorrect in her statement and instructed her to follow orders. (Ex. 8).

g. Plaintiff was counseled by Sgt. King and/or Sgt. Osgood concerning her reporting late for work on August 1, 10, 25, and 30, 1983, and was reminded of her responsibility to report to work on time. Plaintiff was fifteen minutes late to work on August 29, 1983, due she said to a flat tire. (Exs. 3, 10, and 11).

h. On August 31, 1983, Sgt. King issued a memorandum to Captain Terry regarding Plaintiff arriving thirty minutes late for work on August 30, 1983. Plaintiff indicated she was late because one of her children had removed her alarm clock. Sgt. King recommended a one day suspension, without pay, for Plaintiff. (Ex. 10).

i. September 10 through 13, 1983, Plaintiff called in sick to work. Plaintiff's scheduled days off were September 14 and 15. Since Plaintiff had no telephone, Sgts. King and Osgood drove to her home twice during that period, on the 13th and 16th. They were told by Plaintiff's children and a neighbor that Plaintiff was not home on these visits. Plaintiff reported ill on September 16 and 18, 1983. Sgt. Allen was told to contact Plaintiff to ascertain her condition, tell her to call on the 19th, and to bring a physician's statement when she returned. On the 18th Plaintiff told Sgt. King that she would be into work on the 19th and would have the doctor's statement on the 20th. (Exs. 3 and 12).

j. On September 19, 1983, Plaintiff again reported in ill, stating her doctor would not let her return to work until the 22nd, which was one of her scheduled days off. Sgt. King contacted Plaintiff's doctor on the 19th and was advised that Plaintiff had first seen the doctor on September 15, 1983, that she had another appointment scheduled for the 22nd, that she was being treated for colitis, and that the staff member was unable to say if the doctor had ordered Plaintiff on bed rest. (Ex. 12).

k. On September 23, 1983, when Plaintiff returned to work, Sgts. Osgood and Myers interviewed her regarding her time off from September 10 through September 22, 1983. Plaintiff stated she had been at her home during the entire time. Plaintiff had also requested that her duty hours on Saturdays be changed so she could attend a Spanish class. The request was denied because she "was the only C.S.O. on duty Saturdays, and was needed to transport the mail, etc." Lt. Myers stated he had determined that Plaintiff had been reporting in sick to attend the class. It was Lt. Myers' in-

tention to confront Plaintiff on September 26, 1983 and deliver a disciplinary package to her at that time. Lt. Myers assessed Plaintiff's performance at District II as unsatisfactory. (Ex. 14). Plaintiff asserts she was home all the time she called in sick, but did not answer the door to Sgt. King, because she was sick and did not want to see her. She didn't feel like Sgt. King had any right to be at her home.

l. On September 23, 1983, Plaintiff submitted her resignation and stated her reason for leaving as, "I have had all that I can take of this institution's double standards, and sexist, racist, gestapo tactics." (Ex. 13).

## CONCLUSIONS OF LAW

The following conclusions of law are applicable to the issues involved in the motion for summary judgment:

1. Defendant in an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as to Plaintiff's claim of racial discrimination in regard to his failure to hire Plaintiff as a deputy sheriff.

2. Plaintiff was an employee of Defendant.

3. There are various types of Title VII claims; disparate treatment, retaliation, constructive discharge, and disparate impact. Plaintiff here is alleging claims of disparate treatment and constructive discharge.

4. A disparate treatment charge is one where an employee alleges less favorable treatment because of race, sex, etc. In a disparate treatment case a plaintiff must prove discriminatory *animus. Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed 2d 207 (1981). Plaintiff carries the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her.

5. A constructive discharge case is like a disparate treatment case. Plaintiff must allege that the employer intentionally rendered the working conditions so intolerable that the employee was compelled to quit involuntarily. *Buckley v. Hospital Corporation of America, Inc.,* 758 F.2d 1525 (11th Cir.1985). To find constructive discharge the trier of fact must be satisfied that working conditions were so difficult or unpleasant that a *"reasonable* person in the employee's shoes would have felt compelled to resign." *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1539 (11th Cir. 1987), citing, *Bourque v. Powell Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir.1980).

6. A *prima facie* case of discrimination may be made in several ways. First, Plaintiff may establish the elements of the three-step analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Additionally, Plaintiff may establish the *prima facie* case by direct evidence of discriminatory intent or by statistical proof of a pattern of discrimination. *Buckley,* 758 F.2d at 1529. The parties agree that in this cause Plaintiff must establish a *prima facie* case of discrimination by establishing the elements of *McDonnell Douglas.* (court-ordered joint memorandum).

7. Plaintiff must prove her *prima facie* case by a preponderance of the evidence. The preponderance of evidence standard in Title VII cases means establishment of a "legally mandatory, rebuttable presumption." *Burdine,* 450 U.S. at 254, n. 7, 101 S.Ct. at 1094 n. 7.

8. Under the test of *McDonnell Douglas* Plaintiff must produce evidence of the four prongs of that test: 1) she was a member of a protected group, 2) an adverse employment action took place, 3) she and a similarly situated non-protected person received dissimilar treatment, and 4) sufficient evidence, either circumstantial or direct, exists to infer a nexus or causal connection between race and the disparate treatment. *McDonald v. Sante Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), *Nix v. WLCY Radio,* 738 F.2d 1181 (11th Cir.1984).

9. If Plaintiff meets this threshold of establishing a *prima facie* case of discrimination by a preponderance of the evidence, the burden shifts to the employer to

come forward with a legitimate non-discriminatory business reason for the adverse action taken. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Where the employers carries this burden and shows such non-discriminatory reason, the burden once again shifts to Plaintiff to show by a preponderance of the evidence either that the offered reason is mere pretext and that a discriminatory reason more likely motivated the employer or indirectly by showing the proffer explanation is unworthy of credence. *Burdine*, at 256, 101 S.Ct. at 1095.

■ 10. Summary judgment may be appropriate where the undisputed facts demonstrate that Plaintiff has not sustained her burden of established a *prima facie* case pursuant to the standards of *Celotex Corp.* If Plaintiff establishes a *prima facie* case, Defendant may rebut the case with affidavits, depositions, or undisputed documentary evidence demonstrating legitimate, nondiscriminatory reasons for the adverse employment action. The burden then is on Plaintiff to offer evidence that the stated reasons were merely pretextual. Mere conclusory allegations of discrimination, without more, are insufficient to defeat a motion for summary judgment. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1984).

■ 11. The fact that Plaintiff initially demonstrated a prima facie case, if rebutted by the employer, is not relevant to the action following that rebuttal. *United States Postal Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Therefore, summary judgment is appropriate in a discrimination case where Plaintiff fails to set forth specific facts showing a genuine issue exists as to whether an employer's articulated reason is pretextual. *Mauter v. Hardy, Corp.*, 825 F.2d 1554 (11th Cir.1987).

## DISCUSSION

Plaintiff has asserted twelve incidents of discrimination relating to the charges of disparate treatment, constructive discharge, and existence of a racially hostile working environment. The Court will ex-amine these twelve articulated incidents individually to determine if under the above-cited standards they will survive the motion for summary judgment.

### 1: Failure to hire for a deputy position

■ Plaintiff has established for purposes of this motion that she is a member of a protected group. As to this issue, Plaintiff has failed to establish the remaining elements of the *McDonnell Douglas* test. Plaintiff makes conclusory allegations in her depositions that she was qualified for the position of deputy sheriff; she has provided the Court with no evidence establishing what were the qualifications for that position. Plaintiff concedes in the court-ordered joint memorandum that the C.S.O. position was not an entry level position for deputy. Plaintiff admits that some white C.S.Os were not selected for the position and that some black C.S.Os were selected. (Plaintiff depo. 10–8–85, pgs. 25–26). Plaintiff presents no evidence beyond her conclusions based on her observation that she was more qualified than anyone hired as a deputy. Plaintiff has not established a *prima facie* case of discrimination on this issue.

### 2: Wrongful transfer following altercation with Cindy Ryals

On March 11, 1982, Plaintiff and co-worker Cindy Ryals were involved in a verbal argument at the workplace. As a result, both employees received a written reprimand and were warned future similar conduct could result in discharge. The co-worker and Plaintiff continued to get along badly. At some point in time thereafter both employees were transferred to new duty stations. Plaintiff was sent to the Brandon substation. Cindy Ryals was assigned to the Town n' Country substation, but apparently ultimately worked at the Lutz station. (Exs. 4(b) and 15).

Assuming, for the sake of this motion, that Plaintiff has sufficiently established a *prima facie* case as to this issue, Defendant must come forward with a legitimate non-discriminatory business reason for the action taken. Defendant has done so in

this cause. Defendant has established that the transfers of Ryals and Plaintiff were effected for two reasons: 1) the expansion of hours at two substations which required coverage by C.S.O.s and 2) the continuing dissension between the two employees required they be separated.

■ Therefore, Plaintiff must come forward, with more that conclusory allegations, to show that the reasons advanced by the employer are pretextual and a discriminatory reason is more likely or that the proffered reason is unworthy of credence. Plaintiff has not made a sufficient showing under *Celotex* to rebut Defendants proffered legitimate reason for the action taken in transferring these employees. Both employees one black and one white were transferred at the same time. Plaintiff make many conclusory allegations that Cindy Ryals received preferential treatment in her transfer, but that is all she offers to rebut Defendant's showing of legitimate reason for the employment action. The Court finds Plaintiff has failed to come forward with specific facts showing a genuine issue for trial on this issue.

### 3: Discriminatory night shift and station transfer

Plaintiff asserts that she was transferred to the night shift and to District II even though she had more seniority than other caucasian C.S.O.s and that the white employees picked their shifts. As to the allegation in regard to the transfer to District II, the Court has already discussed this in issue II and found no genuine issue for trial as to the issue of transfer. The remaining portions of this issue is whether or not there is a genuine issue of fact as to whether transfer to the night shift was discriminatory.

■ The Court finds that on the night shift issue Plaintiff has failed to establish a *prima facie* case of disparate treatment. Assuming, that Plaintiff has established the other three prongs of the *McDonnell Douglas* test, she has failed to present sufficient evidence to infer a nexus between the alleged disparate treatment and racial motivation. Plaintiff's only "evidence" is her own conclusory feelings that it could not be anything else but racial motivation. Plaintiff has failed to establish in any manner that other white employees got to pick the shifts they wanted.

### 4: Denial of use of county vehicle

Plaintiff asserts that C.S.O. Steve Smith was given a take home car, while she was denied use of a car to travel to the Brandon substation. Mr. Smith testified that he was allowed the use of a car to travel between the Ybor City station and the Plant City station and that he mistakenly understood that he could take the car home at night. Corporal Mays told him that he was only allowed to use the car for travel between stations and was not supposed to take it home. The car was taken away from Smith after he returned to the Ybor City station. (Smith depo., pgs. 6–7). Plaintiff stated she believed Smith was given a car because his father was chief of police at that time. (Plaintiff depo. 18–8–85, pg. 22). Plaintiff also concluded the use of a car was denied to her because she was black; that was the only reason she could see for the denial.

■ Again, the Court concludes that Plaintiff has failed to establish a *prima facie* case regarding this issue. The evidence presented may show preferential treatment of Steve Smith in regard to use of a county car, but Plaintiff has brought no evidence, except her own conclusory allegations, showing a causal connection between the disparate treatment and her race.

### 5: Lesser qualified caucasians selected for detective training

It appears from the evidence submitted that in this regard, Plaintiff is referring to a C.S.O. orientation program, whereby a C.S.O. would spend two weeks observing the functions of different divisions, including detective division. Brenda Gatlin, C.S.O., testified that a lot of C.S.O.s had received this kind of training, but Plaintiff asserted that only Cindy Ryals, daughter of an important man, and Robin Hart,

daughter of Lt. Hart, participated. (Gatlin depo., pg. 9 and Plaintiff depo., pgs. 47–48). Defendant contends the orientation program was only effective from April to June, 1983, because in June all C.S.O.s received full-time assignments to particular divisions.

Plaintiff has once again failed to meet the threshold requirement on this issue of establishing a *prima facie* case of disparate treatment based on race. Plaintiff has established that the two C.S.Os, who she asserts were the only participants of the program, were daughters of men of some "influence." This may have been the reason for their being able to participate in this program, but it is insufficient to establish the three requisite elements of the *McDonnell Douglas* test.

### 6: Denial of opportunity to make up sick leave

As with the previous issues, the Court must conclude that Plaintiff has failed to establish a *prima facie* case of disparate treatment. Plaintiff asserts that she "knows" that other C.S.Os were allowed to make up time off, either sick leave or vacation leave. These allegations are merely conclusory. Brenda Gatlin, a white C.S.O., testified that she was never allowed to make up time, nor did she know if anyone else ever made up time. All Plaintiff has presented in support of this allegation is speculation, conjecture, and unsupported conclusions.

### 7: Disparate treatment regarding provision of doctor's statement

Plaintiff has to present sufficient evidence that she and a similarly situated non-protected person received dissimilar treatment. Plaintiff has failed to provide sufficient evidence of this element of *McDonnell Douglas*. During the period, December 16, 1981, through August, 1983, less than two years, Plaintiff reported absence 33 days. Seventeen of the 33 absences were in conjunction with scheduled days off or holidays. Defendant notified Plaintiff that she would need to provide a doctor's statement for absence which occurred in conjunction with a scheduled day off or holiday.

Plaintiff has presented no competent evidence that any other employee was similarly situated, having such a record of taking days off, particularly sick days, just before or after a day off or a holiday. Plaintiff's unsubstantiated conclusions that other employees did the same thing are insufficient to establish this element. Plaintiff has failed to establish a *prima facie* case as to this issue.

### 8: Disparate treatment regarding taking time off for Spanish class

Assuming, for the purposes of this motion, that Plaintiff has established a *prima facie* case concerning this issue, the Court finds that Defendant has presented a legitimate nondiscriminatory business reason, which Plaintiff has failed to rebut. Defendant states that the request for time off to take Spanish class was denied because she was the only C.S.O. on duty Saturdays at her duty station and was needed to transport mail, etc. Plaintiff has not denied that she was the only C.S.O. on duty at her duty station. She contends that a Ms. J. Walker called in sick every weekend, but has provided no competent evidence to support that allegation nor has she provided evidence as to what the situation was at Ms. Walker's duty station.

Defendant has provided a sufficient business reason for the denial of Saturdays off for Plaintiff. Plaintiff has provided no competent evidence that the reason is pretextual nor is the proffered reason unworthy of credence.

### 9: Requiring a memo for being five minutes late

Plaintiff asserts that no caucasians, who were late on numerous occasions, were required to submit memos concerning the lateness. Plaintiff has presented no evidence to show that she has actual knowledge of this statement, like much of this case, Plaintiff relies on conjecture and speculation as to whether or not other employees had to provide written memos in

these circumstances. Neither has Plaintiff established, by sufficient evidence, that the disparate treatment, assuming it existed, was racially motivated. No *prima facie* case of disparate treatment or discrimination has been established on this issue.

*10: Disciplinary notice report of August 4, 1983*

On August 4, 1983, Plaintiff received a disciplinary report for notification of absence. Plaintiff asserts that another employee missed a day of work in February 1983, and did not call in and was not disciplined. Ms. Perez in her deposition does not remember the alleged incident. Plaintiff has provided no evidence, such as Defendant's attendance records, to show that any other employee, including Ms. Perez, violated the rules regarding notification of absence and Defendant failed to discipline that employee.

Plaintiff is basing her allegations on no more than her perception of other employees situation and her feelings that she was picked on and that it must have been because she was black because in her opinion there was no other reason for the treatment she felt she received.

The Court must reiterate that in order to defeat a motion for summary judgment, Plaintiff must go beyond the pleadings and by affidavits, depositions, or other evidence to designate specific facts showing a genuine issue for trial exists. Plaintiff here relies on the allegations raised in the complaint and clarified in answer to interrogatories and fails to establish the existence of any genuine issue of fact. Accordingly, it is

ORDERED that Defendant's motion for summary judgment be granted. The Clerk of the Court shall enter a judgment in favor of Defendant dismissing this cause of action, with prejudice.