Teresa **ANDRADE**, Plaintiff,

v.

**MORSE OPERATIONS, INC.,**
**etc., Defendant.**

No. 94–2077–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 6, 1996.

Walter E. Aye, Walter Edwards Aye, P.A., Tampa, FL, for Teresa Andrade.

James Clark Polkinghorn, David H. Spalter, Fisher & Phillips, Ft. Lauderdale, FL, for Morse Operations.

**ORDER**

KOVACHEVICH, Chief Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment (Dkt. 112, 113), and Plaintiff's response (Dkt. 119).

***STANDARD OF REVIEW***

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

"The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue of material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 323–324 [106 S.Ct. 2548, 2552, 91 L.Ed.2d 265] (1986)."

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. That burden can be discharged by "showing ... that there is an absence of evident to support the nonmoving party's case." *Celotex,* 477 U.S. at 323 and 325, 106 S.Ct. at 2552–53 and 2554.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. at 2510.

In determining whether a material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–997 (5th Cir.

1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2nd Cir.1980). When a party's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper but required. *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982).

In this case, Plaintiff has asserted three claims against Defendant. Counts I and II assert claims for sex discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Florida Human Rights Act ("Fla.Stat. 760"). The Court will address only Counts I and II, since the parties have dismissed Count III, a claim for negligent retention.

## I. Defendant's Statement of Facts

1. On April 23, 1992, Plaintiff applied for a position as an automobile salesperson at Defendant's Saturn of Tampa dealership in Tampa, Florida. Plaintiff had sold automobiles at two other Tampa area auto dealerships. Defendant's sales manager, Bob Kane ("Kane"), and general sales manager, Don Kiley ("Kiley"), interviewed Plaintiff and hired her.

2. Saturn's salespersons are assigned scheduled working hours, but are permitted to work additional hours if they desire. Salespersons are assigned customers who do not have an appointment with a specific salesperson on a rotation basis.

3. Saturn salespersons are required to show cars at a display at Tampa Bay Center mall. Saturn's policy is that top salespersons are exempt from this duty, while the least productive salespersons must work weekend shifts at the mall. Salespersons cannot sell cars at the mall, but are permitted to solicit business and give prospective customers their business card and phone numbers.

Plaintiff was required to work weekend shifts at the mall.

4. While Plaintiff worked at Saturn, Kane and Kiley assigned work areas to the salespersons. The standard work area contained a desk which was shared by two salespersons. Because Saturn had more salespersons than the standard work areas could accommodate, an additional work area was set up. Plaintiff was assigned to the additional work area, which was normally occupied by only one salesperson. After Plaintiff's termination, a male salesperson was assigned to that work area.

5. On September 17, 1992, Kane issued Plaintiff a written warning for excessive absenteeism because Plaintiff did not show up for work on September 16, 1992, and such incidents had happened twice before. Although Defendant's Employee Handbook requires that an absentee call and ask to speak to either manager, Plaintiff called the receptionist, but did not ask to speak to either manager. Defendant informed Plaintiff that further absenteeism could result in suspension. In April, 1992, Plaintiff was absent from a Saturn sales meeting. Plaintiff was then suspended for one week.

6. After the suspension, Kane reviewed Plaintiff's performance, and concluded that Plaintiff should be terminated because her productivity, work effort and customer satisfaction survey scores were very poor. Kane and Kiley decided to issue Plaintiff a warning and give Plaintiff the opportunity to improve.

7. On April 26, 1993, Kane issued a written warning to Plaintiff because Plaintiff's customer satisfaction index scores were below national average, and below Saturn's average. Kane also informed Plaintiff that her sales productivity was unacceptable and needed to be improved.

8. In May, 1993, Plaintiff's productivity did not improve. Plaintiff sold seven cars, ranking second to last among Saturn salespersons. From January, 1993 through May, 1993, Plaintiff averaged 7.30 cars per month, ranking last among all Saturn salespersons, and totaled $35,060 in gross sales, ranking last among all Saturn salespersons who worked during that five month period. Kane and Kiley then jointly decided to terminate Plaintiff's employment.

9. Plaintiff was terminated on June 4, 1993.

II. Plaintiff's Statement of Facts

1. Plaintiff states that her customer's trade-ins were appraised by Kiley at less than the "black book" suggested value, while Kiley appraised the trade-ins of other salespersons at "black book" value.

2. Plaintiff states that her work area did not have a telephone on her table, and therefore she could not be as quick to pick up the unsolicited customer calls announced over the public address system. Plaintiff further states that her work area dissuaded customer contact.

3. Plaintiff states that when a "standard" work area became available, it was assigned to a less senior salesperson, Scott Lundy. Plaintiff states that as a result other salespersons and customers concluded her services were less valued. Plaintiff states that when she sought permission to move back to a standard work area, Kiley refused her request. Plaintiff states that Kiley contends that Plaintiff chose her work area, and never asked to be moved from it.

4. Plaintiff alleges that she was assigned "mall duty" more often than other salespersons. Plaintiff alleges that there is a factual dispute as to when the management decision to exempt top salespersons from "mall duty" went into effect. Plaintiff alleges that her absence from the dealership on Saturdays, due to "mall duty" had an impact on her sales because the next salesperson on the "up list" would share the sale with the absent salesperson.

5. Plaintiff states that Kiley assigned Plaintiff to "mall duty" on Mother's Day, even though he knew Plaintiff was a single parent who wished to spend the day with her child. Plaintiff offers the testimony of Larry Skeens that others volunteered to substitute for Plaintiff on that day, but Kiley refused. Plaintiff further states that Kiley assigned her to work on her birthday, and Larry Skeens testified that this was not done to any other salesperson.

6. Plaintiff states that during her employment she saw many female applicants come into the Saturn dealership to apply for employment. Kiley states that he did not get many female applicants.

7. Plaintiff states that she was suspended for one week in 1993 for missing a sales meeting, but other male salespersons (Howell and Evans) who missed sales meetings were not suspended. Larry Skeens testified he did not know of any other salesperson who was suspended for missing a sales meeting.

8. Plaintiff states Kiley treated her in a demeaning and hostile manner such that it was evident to the other salespersons.

9. Plaintiff states that after she was issued a written warning on April 26, 1993, she was told that further violations may result in suspension. Plaintiff states that Kane did not show her the surveys on which the discipline was based, and Kane did not explain what action would be taken in the future. Plaintiff states that Kane advised Plaintiff to "get [her] scores up." Plaintiff states that Kane and Kiley testified that Plaintiff's Customer Satisfaction Index ("CSI") did not improve after the written warning, but that available CSI reports show that Plaintiff's scores were at the highest level after Kane issued the April, 1993 warning.

10. Plaintiff states that other male salespersons with low CSI scores were given "friendly reminders" and promoted rather than given written warnings as Plaintiff was.

11. Plaintiff states that it is a disputed fact whether Plaintiff was ever given any oral or written warning to improve her sales productivity or be subject to termination.

12. Plaintiff states that Defendant fired male salespersons (e.g. Petrozelli) for poor productivity, but subsequently rehired them.

### III. Statement of Applicable Law

The parties agree that this case is controlled by the framework set forth in *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as supplemented by *Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). However, there is a dispute as to how to apply the framework to this case.

In *McDonnell–Douglas,* the Supreme Court established a three-part analysis for employment discrimination cases. Plaintiff must establish a *prima facie* case, which raises a rebuttable presumption of discrimination. Defendant must rebut the presumption by articulating legitimate, nondiscriminatory reasons for its alleged discriminatory employment decisions. Once Defendant meets this burden, Plaintiff must establish that Defendant's articulated reason for its decision is a mere pretext for unlawful discrimination.

Plaintiff argues that this is a "glass ceiling/disparate treatment case" case, in which Defendant actively prevented Plaintiff from meeting the performance standards which Defendant required Plaintiff to meet. Plaintiff contends that under the applicable framework, Plaintiff must establish that: 1) She was member of a protected group; 2) An adverse employment action took place; 3) She and a similarly situated non-protected person received dissimilar treatment; and 4) sufficient evidence, either circumstantial or direct, exists to infer a nexus or causal connection between Plaintiff's sex and the disparate treatment.

■ Plaintiff contends that Defendant has misstated the elements of Plaintiff's *prima facie* case. Plaintiff contends Plaintiff need not show she was qualified for the position Plaintiff held, because that is not an element in a glass ceiling/disparate treatment case. Plaintiff contends that the issue of qualification arises when a plaintiff must put on evidence of pretext if the employer suggests a nondiscriminatory motive. *Pugh v. Heinrich,* 695 F.Supp. 533 (M.D.Fla.1988); *Young v. General Foods Corp.,* 840 F.2d 825, 829–30 n. 3 (11th Cir.1988).

*Young* is an age discrimination case, in which the Court noted the following:

"Both Young and General Foods devote a significant portion of their briefs to the question of whether Young established a prima facie case under *McDonnell Douglas.* It is undisputed that Young was discharged while a member of the protected

class and replaced by someone less than 40 years old. However, the parties disagree over whether Young proved that he 'was qualified to do the job.' *See Buckley,* 758 F.2d at 1529 (prong (4)). In *Rosenfield v. Wellington Leisure Products, Inc.,* 827 F.2d 1493, 1495 n. 2 (11th Cir.1987), this court noted that 'the *McDonnell Douglas* test has been modified in cases where a plaintiff was discharged from a previously held position (as opposed to failure to hire or to promote cases)' by deleting the prong requiring proof of qualification. According to the court, 'the reason for this modification is that in cases' where a plaintiff has held a position for a considerable length of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred.' *Id.* Whether the employee was adequately performing his job would become an issue only if the employer articulated unsatisfactory performance as its reason for discharge. *See id.*

General Foods asserts that Young is not entitled to an inference of qualification because he became a TSM (Territory Sales Manager) less than three years before he was fired. Young claims that, although he received a pay raise when his position was "upgraded" to that of a TSM, he continued to perform basically the same functions he had been doing throughout his tenure with the company. However, because General Foods has asserted job performance as its reason for firing Young, we need not decide whether Young is entitled to an inference of qualification under *Rosenfield.* Instead,

> [t]he focus of the inquiry [is] not a determination of whether [Young] was in fact performing his job adequately, but rather, whether there was sufficient evidence of unsatisfactory performance to be a legitimate concern of [General Foods and] whether this was the real reason for termination and not a pretext for age discrimination.

*Halsell,* 683 F.2d at 292 (upholding directed verdict because of employer's extensive rebuttal evidence) (quoting *Douglas v. Anderson,* 656 F.2d 528, 533 n. 5 (9th Cir.1981)).

In this case, the Court need not determine whether Plaintiff is entitled to an inference of qualification. The focus of this Court's inquiry is whether there is sufficient evidence of unsatisfactory performance to be a legitimate concern to Saturn and whether this was the real reason for termination, and not a pretext for gender discrimination.

A. Defendant states that Plaintiff has not established a *prima facie* case of sex discrimination, and the evidence presented establishes that Plaintiff was not treated differently than other salespersons because of her gender. Defendant contends that the evidence establishes that Plaintiff was terminated for poor sales productivity. Defendant further argues that Plaintiff has not established that Defendant's reason for terminating Plaintiff was pretextual.

### 1. Direct Evidence of Discrimination

It is rare that direct evidence of discrimination is presented in employment discrimination cases. None was presented in this case.

### 2. Circumstantial Evidence of *Prima Facie* Case

Defendant states that Plaintiff must establish that: 1) she is a member of a protected class; (2) that she was qualified for the position she held; (3) that she was discharged or subjected to adverse employment action; and 4) she was replaced by a person outside her protected class or that similarly situated persons outside her protected class were retained or not subjected to the same adverse employment action. *Perryman v. Johnson Products Co.,* 698 F.2d 1138 (11th Cir.1983); *Pugh v. Heinrich,* 695 F.Supp. 533 (M.D.Fla. 1988).

Defendant contends that Plaintiff has not established that she was qualified for the position she held, and that Plaintiff's *prima facie* case fails. Qualification is not necessarily determined at the time of hire, but can be determined through the employee's actual performance. *Silverstein v. Metroplex Communications, Inc.,* 678 F.Supp. 863 (S.D.Fla. 1988); *McDonald v. Union Camp Corp.,* 898 F.2d 1155 (6th Cir.1990).

### 3. Legitimate Non–Discriminatory Reasons for Termination No Evidence of Pretext

Defendant argues that Defendant has presented legitimate non-discriminatory reasons to rebut any inference of discrimination created by Plaintiff's circumstantial evidence. Defendant states that its burden of presenting legitimate reasons is "exceedingly light" pursuant to *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983).

Defendant contends that Plaintiff's poor sales figures conclusively establish legitimate grounds to terminate Plaintiff's employment. *Young v. General Foods Corp.,* 840 F.2d 825 (11th Cir.1988); *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568 (7th Cir.1989).

Plaintiff must present sufficient evidence to demonstrate that discrimination was the more likely motive behind Defendant's employment decisions. *Clark v. Huntsville City Bd. Of Education,* 717 F.2d 525, 527 (11th Cir.1983). Plaintiff must come forward with specific facts upon which a jury could reasonably conclude that not merely was Plaintiff treated differently than male employees, but that she was treated differently *because* of her gender. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Defendant contends that Plaintiff has presented no evidence controverting Defendant's evidence that Plaintiff's performance as a salesperson was unsatisfactory as to sales and Customer Satisfaction Survey scores. Defendant further argues that Plaintiff has not controverted Defendant's evidence that Defendant terminated male salespersons for the same reasons.

### A. Trade–In Appraisals

Defendant argues that Plaintiff's knowledge of her co-workers' trade-in appraisals is incomplete. Defendant further argues that other many factors other than model year and "black book" value influence an appraisal, such as the specific car's physical condition. Defendant further argues that other male salespersons had the same complaint as to low appraisals of customer trade-ins (Testimony of Larry Skeens).

### B. Work Area

Defendant notes that Plaintiff had a work area to herself, unlike other salespersons who shared an area. Defendant further notes that after Plaintiff was terminated, her work area was assigned to a male salesperson, who thereafter ranked among Saturn's top salespersons.

### C. Mall Duty

Defendant argues that Saturn maintained a policy which required all but the top salespersons to periodically work at a local mall, and required the lowest producers to work at the mall on Saturdays. Defendant contends that this policy adversely impacted Plaintiff because her sales productivity was poor, not because she was female.

Defendant further argues that, pursuant to *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991):

> "Federal courts 'do not sit as a super personnel department that reexamine an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's manager, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of his behavior.' "

(Citation omitted).

The Court's role is to determine whether Plaintiff has presented facts which, if proven, would establish that the employer's overall justification is false, and that unlawful discrimination was the employer's true motive. It would not be unlawful for Morse to have fired Plaintiff because a manager did not like her, or because she did not sell very many cars, but it would be unlawful for Morse to have fired Plaintiff because she is a woman.

The Court has examined all of the evidence presented by Plaintiff and Defendant in this case. The Court concludes that there is abundant evidence that Plaintiff did not sell very many cars, in comparison to other salespersons at Saturn during the relevant time period. The figures are there in black and white. Therefore, the real question in this

case is whether it is more likely that Plaintiff was fired because she is a woman than it is likely that Plaintiff was fired because she did not sell very many cars, or for some other permissible reason.

As to trade-in appraisals, the Court notes that Plaintiff was not alone in disputing the appraisal of the manager. Other male salespersons had the same complaint.

As to the allegedly inferior work area, the Court notes that a male salesperson used this area after Plaintiff's termination, and became a top salesperson.

As to mall duty, this was a duty shared by all but the top salespersons. It is uncontroverted that Plaintiff was never a top salesperson. Further, Plaintiff has not established a causal connection between her assignment to "mall duty" on Mother's Day, or assignment to work on her birthday, and her gender. Plaintiff has not shown that it is more likely that these things were done because Plaintiff is a woman, than they were done because a manager did not care for Plaintiff's personality or work effort.

As to disparate discipline, Plaintiff has not shown that it is more likely that she was disciplined more severely than other male salespersons because she is a woman, than that Plaintiff was disciplined more severely than other salespersons because a manager did not care for Plaintiff's personality or work effort.

The Court concludes that Plaintiff's circumstantial evidence is not sufficient to show that it is more likely that the reason Plaintiff was terminated is because she is a woman, than that Plaintiff was terminated due to poor sales performance. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment on Counts I and II is **granted** and the Clerk of Court shall enter judgment for Defendant.