**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**and**

**David Papa, Intervenor/Plaintiff,**

v.

**DOMINO'S PIZZA, INC., Defendant.**

**No. 91–1020–CIV–T–25(A).**

United States District Court, M.D. Florida, Tampa Division.

Nov. 17, 1995.

---

**18.** *See City of Atlanta v. Metropolitan Atlanta Rapid Transit,* 636 F.2d 1084 (5th Cir.1981).

Gedety N. Serralta, Equal Employment Opportunity Commission, Miami, FL, for plaintiff E.E.O.C.

Marcia S. Cohen, Cohen & Campbell, P.A., St. Petersburg, FL, for intervenor-plaintiff David Papa.

David M. Rogero, Akerman, Senterfitt & Eidson, Miami, FL, Francyne Stacey, Pear, Sperling, Eggan & Muskovitz, P.C., Ann Arbor, MI, for defendant Domino's Pizza, Inc.

## ORDER

ADAMS, District Judge.

This cause was heard by the Court on November 14–17, 1994. Plaintiff ("EEOC") and Intervenor/Plaintiff ("Papa") claim that Defendant ("Domino's") violated Title VII by subjecting Papa to a sexually hostile work environment, engaging in *quid pro quo* harassment, and retaliating against him for lawful actions. Pursuant to the evidence presented at trial, the Court makes the following findings:

## I. FINDINGS OF FACT

1. This is an action under §§ 703(a)(1) and 704 of Title VII of the Civil Rights Act of 1964, as amended. This action was filed by Plaintiff, Equal Employment Opportunity Commission ("EEOC") pursuant to § 706(f)(3) of Title VII, 42 U.S.C. § 2000e–5(f)(3). This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, 1345 and 42 U.S.C. §§ 2000e–5(f)(1) and (3).

2. David Papa ("Papa") is intervenor/plaintiff herein. Papa was the store manager of the Defendant's Port Richey store in January, 1988.

3. Defendant Domino's Pizza, Inc. (Domino's) employed Papa and is an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b).

4. Beth Carrier ("Carrier") was Papa's immediate supervisor and Defendant's Corporate Area Supervisor. Papa's performance under Carrier was more than satisfactory. In fact, Papa had been promoted at least twice while under her supervision. Just prior to the termination complained of herein, Carrier had nominated Papa as "Manager of the Year."

5. At various times, from January 1988 until May 1988, the following occurred between Carrier and Papa:

 a. Carrier would come into the store and place her hand on Papa and would rub his neck and back.

 b. While standing besides him, Carrier would put her hand around Papa's waist.

 c. At a business meeting at Carrier's residence, Carrier told Papa that he had a "nice ass" and that he shouldn't bend over as he did because it "turns me on."

 d. Carrier told Papa that he had a "nice ass" on one other occasion when the two of them were distributing coupons to local residences.

 e. Carrier stated. "I know you are having trouble with your wife, but you are separated now and would be interested in starting a relationship again."

 f. Carrier told Papa that she loved him and cared about him.

 g. Carrier told Papa that she would never treat him like his estranged wife did and told him "just think Dave, you could become a supervisor and I could stay home and take care of David [Papa's young son]."

 h. On one occasion, Carrier was standing next to Papa in the store and put her arm on his back while talking to him; when he moved away, Carrier moved close, put her arm around his back again, and "reached down with her hand and she grabbed my behind and squeezed it."

 i. On one occasion, Carrier was in the store helping to make pizza when she told him that her bra had slipped off and asked if that turned him on.

 j. In April or May, Carrier came to his store and said, "You know how I feel about you. I care about you, and you and David are more than welcome to come live with me.... you know I love you." Papa ordered her from his office and threatened to report the conduct to her supervisor. Upon leaving the store, Carrier told Papa that she would "get him."

6. Papa claims that Carrier's sexual advances embarrassed him and made him feel uncomfortable. His testimony was corroborated by employees who observed several of the incidents described above. There is no evidence that he provoked or encouraged Carrier's sexual overtures.

7. Approximately six days after the incident described in paragraph 5(j) Carrier and Mike Haskins, Carrier's supervisor, came to the store and fired Papa.

8. The reason for termination proffered by Carrier and Haskins at the time they fired Papa, and the reason proffered by the Defendant at trial are the same. That is that Papa was fired for violating company policy. One alleged violation was the payment of an employee, Mr. Whetzel, out of the mileage account rather than the labor account. Defendants also claim that Papa hid coupons and "lates" (discounts for late deliveries) in order to improve the appearance of the store's financial position. Defendant charac-

terizes these activities as "manipulation of paperwork."

9. The evidence did not support Defendant's claim that Papa was responsible for hiding coupons or lates, or that he directed Whetzel to seek payment from the mileage fund. Instead, the evidence showed that Carrier instructed employees to hide coupons and lates. Furthermore, months before Papa's firing, Carrier approved Whetzel's idea to rollover the labor cost into his mileage account and directed Whetzel to carry out his idea.

10. Papa did not instigate or implement the "roll over" from the labor account to the travel account for Whetzel. In fact Papa did not know that it was a violation of company policy. On the contrary, Papa testified that he did not believe it a violation of company policy because Carrier approved Whetzel's idea. Furthermore, Carrier reviewed the daily paper work frequently and would have noticed the changes in Whetzel's mileage, prior to Papa being fired.

11. Defendant submitted no evidence of prior misconduct or deficient performance on the part of Papa. Nor did Defendant show that it was notified of Papa's alleged "manipulation of paperwork" by anyone other than Carrier.

12. During the time Papa managed Domino's Port Richey store, he earned $350 per week and received a bonus averaging $606 for every four-week period.

13. The Court finds that Papa did seek employment in fast-food management after he was terminated from Domino's but was prevented from obtaining employment because he reported to prospective employers that he was terminated by Domino's for "manipulation of company paperwork." Papa did find work in Rhode Island and continued to work at various restaurant jobs until his back was injured in October of 1991. Thereafter, he attended Fisher College part-time and the University of Rhode Island full-time for three terms and part-time for a fourth term. In 1994, Papa discontinued his job search for work in fast food management and decided to enter college to train for another profession.

## II. CONCLUSIONS OF LAW

### A. Hostile Environment

■ 1. A prima facie case of sexual harassment under the hostile environment theory is established where the Plaintiff shows, by a preponderance of the evidence, that:

(a) the employee belongs to a protected group;

(b) the employee was subjected to unwelcome sexual harassment;

(c) the harassment complained of was based on sex;

(d) the harassment complained of affected a term condition or privilege of employment in that it was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment; and

(e) the employer is liable.

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554 (11th Cir.1987).

■ 2. Papa is a man, hence for the purposes of a sexual discrimination case he is a member of a protected group. *Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir.1982).

■ 3. Papa was subjected unwelcome sexual harassment. Actions such as "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" may be considered by the Court as evidence of sexual harassment. *Henson*, 682 F.2d at 903. Furthermore, the conduct must be unwelcome in that the "employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive". *Id.* Carrier's conduct, detailed in paragraph 5 of Findings of Fact *infra*, embarrassed Papa and made him feel uncomfortable. His discomfort was so acute that he even took the step of instructing another employee to be present whenever Carrier visited the store. Furthermore, Papa made it clear to Carrier that her sexual advances were unwelcome, yet she persisted in making them.

4. Carrier's harassment of Papa was based on his sex. "In proving a claim for a hostile work environment due to sexual harassment, the Plaintiff must show that, but for the fact of his sex, he would not have been the object of harassment." *Bundy v. Jackson,* 641 F.2d 934, 942–43. *Phillips v. Martin Marietta Corp. 5,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613. This case involves a female supervisor making sexual demands of a male subordinate. Carrier's demands were being made of Papa because he is male, hence this element is clearly established. *Henson,* 682 F.2d at 903–04.

5. Carrier's harassment was sufficiently severe enough to create a hostile and abusive work environment which affected a "term, condition or privilege" of Papa's employment.

a. "For sexual harassment to be actionable it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings,* 477 U.S. at 67, 106 S.Ct. at 2405 *citing Rogers v. EEOC,* 454 F.2d 234 (5th Cir.1971). As the Supreme Court explained in *Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993), there is no precise test for determining whether conduct created a hostile and abusive atmosphere. The *Harris* Court did provide guidance however, by stating that "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct: its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

b. Papa protested Carrier's harassment and on one occasion explicitly instructed Carrier not to touch him. In order to avoid unwanted contact with Carrier, Papa resorted to asking employees to be present when she was present in his store. Undoubtedly, the terms and conditions of Papa's employment were altered when he had to confer with his superior in the presence of his subordinates. Finally, when Plaintiff ordered Carrier from the Port Richey store and threatened to report her to her boss, her retaliatory response, "David I'll get you" led to his termination several days later—the most severe alteration of the terms of Papa's employment.

6. Domino's is directly liable for Carrier's creation of a hostile and abusive work environment. The Supreme Court touched on employer liability in *Meritor Savings* by holding that employers are neither strictly liable for the actions of its supervisory employees who create a hostile atmosphere, nor exempt from liability when they have not been notified directly. *Meritor Savings,* 477 U.S. at 72, 106 S.Ct. at 2408. The Eleventh Circuit has established more explicit guidelines for determining when an employer can be liable for the actions of employees who have created a hostile work environment. The employer may be either directly liable or indirectly liable via *respondeat superior. Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554 (11th Cir.1987).

a. Domino's is not liable via *respondeat superior.* In order to hold an employer indirectly liable for the actions of its employees, the plaintiff must establish that the employer knew, or should have known of the harassment and failed to take remedial action. *Vance v. Southern Bell Tel. and Tel. Co.,* 863 F.2d 1503, 1512 (11th Cir.1989). The plaintiff can meet this burden either by showing that he "complained to higher management, or that the harassment was pervasive enough to charge the employer with constructive knowledge." *Id.* Papa never made a report of harassment to anyone at Domino's, although he testified that he attempted to contact Haskins about Carrier's conduct. Furthermore, although the harassment was pervasive in the workplace, no one from Domino's management was there to observe Carrier's conduct. Accordingly, Domino's had neither actual or constructive knowledge of the hostile atmosphere created by Carrier.

b. However, Domino's is directly liable for Carrier's actions. Where the harasser is the employer or an agent of the employer the employer is directly liable. *Vance,* 863 F.2d at 1512. The Eleventh Circuit adopted the EEOC's view that "supervisor acts as an 'agent' of the employer ... where [the] supervisor exercises the authori-

ty actually delegated to him by his employer, by making or threatening to make decision affecting the employment status of his subordinates." *Sparks,* 830 F.2d at 1558–59. As his supervisor, Carrier possessed the authority to fire Papa. When she fired Papa, Carrier exercised the authority delegated to her by Domino's. Domino's direct liability is not impaired by the lack of actual or constructive notice of Carrier's harassment. *Id.*

7. Plaintiffs have established a *prima facie* case that Domino's violated Papa's right to be free from a sexually hostile and abusive atmosphere

### B. Quid Pro Quo

■■■ 8. To establish a prima facie case of *quid pro quo* harassment, the plaintiff must prove:

(1) the employee belonged to a protected group;

(2) the employee was subject to unwelcome sexual harassment;

(3) the harassment complained of was based on sex; and

(4) the employee's reaction to the unwelcome behavior affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment.

*Sparks v. Pilot Freight Carriers, Inc.* 830 F.2d 1554 (11th Cir.1987);

9. The first three elements listed above are identical to those discussed in paragraphs 2–4 of the Conclusions of Law listed above. The Court need not repeat its analysis, and finds that the first three elements of *quid pro quo* harassment have been met.

■■■ 10. Papa's reaction to Carrier's unwelcome sexual advances affected tangible aspects of his compensation, terms, conditions or privileges of employment. The acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment in order to create liability under this theory of sexual harassment. *Henson, Supra,* at 908. Only six days prior to Papa's termination, Carrier came to Papa's store, expressed her love for him, and invited him to live with her. Papa

ordered her to leave the store and threatened to notify her superior. Carrier threatened to get even. True to her word, Papa's final and most vehement rejection of Carrier's advances resulted in his termination.

11. Plaintiff's have established a *prima facie* case that Domino's [1] violated Papa's right to be free from *quid pro quo* sexual harassment.

### C. Retaliatory Discharge

■■■ 12. To prevail on a claim of retaliation under Title VII, Plaintiff must establish, by a preponderance of the evidence the following:

(1) That he was engaged in a statutorily protected activity;

(2) That the employer has taken an adverse employment action against him; and

(3) That a causal connection exists between the two.

*Donnellon v. Fruehauf Corporation,* 794 F.2d 598 (11th Cir.1986).

■■■ 13. Papa has established a *prima facie* case of retaliation under Title VII.

a. When Papa voiced his opposition to Carrier's sexual advances at the meeting approximately six days prior to his discharge, he was engaging in protected activity under section 704(a) of Title VII.

b. His termination by Carrier, within approximately six days was an adverse employment action taken by his employer.

c. The short period of time and Carrier's comment immediately following the incident that she would "get him", or "fix him" clearly proves a causal connection between the protected activity and the firing.

### D. Plaintiffs' Ultimate Burden of Persuasion

■■ 14. Plaintiffs' having made a *prima facie* case of hostile atmosphere, *quid pro quo,* and retaliatory discharge; the burden of production then shifts to Defendant. The employer is obliged to rebut Plaintiffs' case with "a legitimate, nondiscriminatory reason

---

**1.** Again, Domino's is directly liable for the actions of Carrier, in whom it vested the authority

to terminate Papa. See paragraph 6 *supra.*

for its action. If the defendant carries this burden of production, then the court must inquire whether the stated reason is merely pretextual". *Donnellon v. Fruehauf Corporation*, 794 F.2d at 600. This burden equally applies to the hostile environment and the quid *pro quo* theories of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

 15. The Court concludes that the reasons proffered by Defendant for Papa's termination were pretextual. The facts of this case lead the Court to conclude that Carrier reported Papa for her **own** misdeeds and not because he was guilty of hiding coupons and lates or for improperly paying Whetzel from the mileage fund. Carrier's report of Papa's alleged misconduct was made out of spite and in retaliation for Papa's rejection of her sexual advances. Without her intervention Papa would not have been fired.[2]

16. Having determined that Defendant's proffered reasons were pretextual, the Court now concludes that Plaintiffs have met their ultimate burden of persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1992). The Court concludes that Plaintiffs have demonstrated by a preponderance of the evidence that Domino's discriminated against Papa by violating his right to be free from a sexually hostile and abusive atmosphere; *quid pro quo* harassment; and retaliation for exercising a lawful right. Plaintiffs are therefore entitled to a judgment.

### E. Damages

 17. Papa, as a victim of unlawful discrimination, is entitled to be "made whole." *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1526 (11th Cir.1991). Plaintiffs seek damages for back pay, reinstatement or front pay, and injunctive relief.[3]

18. Defendant contends that Papa's damages should be reduced for failure to mitigate his damages. However, the Court concludes that Papa made reasonable efforts to obtain substantially equivalent work and thus can not be faulted for failure to mitigate his damages.

 19. Papa is presumptively entitled to back pay from the date of discharge to the date of trial, minus his interim earnings. However, the Court finds that David Papa will be "made whole" with an award of damages from the date of termination up to September, 1994 when he began college to change careers.

 20. No award of front pay nor a reinstatement requirement is necessary to complete the make whole remedy. "Front pay is only appropriate when back pay and other damages will not fully compensate Plaintiff for his damages." *Dillon v. Coles*, 746 F.2d 998 (3rd Cir.1984). Back pay is sufficient to fully compensate Plaintiff for the injury he suffered as a result of Defendant's conduct.

 21. The Court bases its damage calculations upon the following findings:

a. Papa's salary and bonuses are held constant at the level Plaintiff earned when terminated: $350.00 dollars per week and a bonus of $750.00 dollars every four weeks.

b. The employer's contribution for FICA is awardable to Plaintiff.

c. Papa is entitled to recover for his out of pocket expenditures for health insurance.

d. Papa is not entitled to recover projected employer contributions to a retirement plan as he did not elect to participate in the plan during his employment.

e. Interest is compounded annually using the I.R.S. adjusted prime rate.

g. Damages ceased to accrue on September 1, 1994. However, prejudgment interest accrues to the date of judgment.

---

**2.** Domino's knowledge of Carrier's motivation or intent in procuring or justifying Papa's termination is irrelevant. As discussed above, for purposes of Title VII liability, Carrier's actions were the actions of Domino's.

**3.** The facts giving rise to this cause of action arose in 1988, hence Papa's remedies are limited to those available under Title VII at that time.

| | 1988 5/27/88 to 12/31/88 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 1/1/95 to 11/16/95 |
|---|---|---|---|---|---|---|---|---|
| Salary | 10,920.00 | 18,200.00 | 18,200.00 | 18,200.00 | 18,200.00 | 18,200.00 | 13,650.00 | |
| Bonus | 5,850.00 | 9,750.00 | 9,750.00 | 9,750.00 | 9,750.00 | 9,750.00 | 7,312.50 | |
| Health Insurance | 840.00 | 1,440.00 | 1,373.00 | 1,757.00 | 2,291.64 | 2,291.64 | 1,718.73 | |
| Social Security | 1,035.40 | 1,732.90 | 1,732.90 | 1,732.90 | 1,732.90 | 1,732.90 | 1,299.65 | |
| (Interim[4] earnings) | (6,000.30) | (6,245.16) | (3,823.20) | (8,563.97) | (4,953.17) | (0.00) | (453.61) | |
| Damages | 12,645.10 | 24,877.74 | 27,232.70 | 22,875.93 | 27,021.37 | 31,974.54 | 20,134.99 | |
| Annual Rate | 5.25% | 11.5% | 11% | 10.25% | 8% | 7% | 7% | 4.67% |
| cumulative subtotal | 0.00 | 13,036.15 | 42,273.98 | 77,152.42 | 110,281.25 | 148,286.83 | 192,879.67 | 227,925.68 |
| Interest | 391.05 | 4,360.10 | 7,645.74 | 10,252.91 | 12,618.30 | 12,618.30 | 14,911.03 | 9,331.84 |
| Subtotal | 13,036.15 | 42,273.98 | 77,152.42 | 110,281.25 | 148,879.67 | 192,879.67 | 227,925.68 | 237,257.52 |
| TOTAL | | | | | | | | 237,257.52 |

22. Plaintiff is entitled to the requested injunctive relief.

23. Counsel for Papa is entitled to recover reasonable attorney's fees. Counsel for an intervenor is not precluded from recovering her fees merely because the E.E.O.C. actively investigated and prosecuted the case. *E.E.O.C. v. Clear Lake Dodge*, 60 F.3d 1146 (5th Cir.1995). In this case, the Intervenor's counsel has represented Papa since the time of the charge, and her work in particular resulted in a significantly greater award of damages than that requested by the E.E.O.C. However, the Court does not have sufficient information upon which to base an award of fees at this time. As in all cases the Court must review the attorney's fee application to make sure that payment is requested "only for those lawyer hours that are reasonably necessary to adequately prosecute the case." *Id.* at 1154 (citation omitted). Therefore, upon appropriate application, the Court will award attorneys fees to the Intervenor.

24. The Court has reconsidered its request for supplemental material on damages and did not use any supplemental material provided in reaching its determination on damages.

It is therefore **ORDERED:**

1. The Clerk is directed to enter judgment on damages in favor of Papa and against Defendant and a judgment on injunctive relief in favor of both Plaintiffs and against Defendant. Damages are awarded in the amount of $237,257.52. Attorney's fees will be awarded to Intervenor's counsel by separate order.

2. Pursuant to 42 U.S.C. § 2000e–3(a). Defendant Domino's Pizza, Inc., its officers, managers, supervisors, successors and assigns are permanently enjoined from engaging in any employment practice which discriminates against employees by subjecting them to sexual harassment and or which discriminates against employees who oppose what the employee believes to be a discriminatory employment decision.

3. Defendant is directed to post a written sexual harassment and retaliation policy in each of its stores for a period of at least two years from the date of this judgment.

4. Defendant is directed to conduct yearly training of each of its managers, including

4. Interim earnings are salary plus social security tax.

store managers, regarding Defendant's sexual harassment and retaliation policy for a period of two years from the date of this judgment. The purpose of this training is to fully disseminate Defendant's sexual harassment and retaliation policy to all of its employees.

5. Defendant's Motion to Strike Plaintiff's filing (Dkt. 119) is **GRANTED** insofar as the Court did not consider that submission in reaching its decision.

**DONE AND ORDERED.**