**Christine SNOKE, Plaintiff,**

v.

**STAFF LEASING, INC., Defendant.**

**No. 97–CV–1573–T–23C.**

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 30, 1998.

**1320**

David J. Sockol, Robert M. Bortner, Sockol & Associates, P.A., St. Petersburg, FL, for Christine Snoke, plaintiff.

Eric Paul Berezin, Powell, Goldstein, Frazer & Murphy, LLP, Atlanta, GA, for Staff Leasing, Inc., defendant.

## ORDER

JENKINS, United States Magistrate Judge.

Before the court is **Defendant's Motion for Summary Judgment** (Dkt.25), defendant's **Memorandum in Support of Defendant's Motion for Summary Judgment** (Dkt.31), **Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment** (Dkt.58), defendant's reply (Dkt.79), and various affidavits and depositions submitted by the parties in support of their arguments.[1]

Plaintiff alleges that her former employer, Staff Leasing, Inc., investigated, harassed and eventually terminated her in response to rumors that she was engaged in a sexual relationship with a male supervisor. She charges that these actions amounted to sexual discrimination, sexual harassment and retaliation, and termination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, ("Title VII") and the Florida Civil Rights Act of 1992, § 760.1, Fla.Stat. (1992) ("FCRA").

## I. BACKGROUND FACTS

Plaintiff, Christine Snoke, was hired as a Service Consultant by defendant, Staff Leasing, in July, 1995. In her position as a Service Consultant, plaintiff was responsible for obtaining employee payroll information from defendant's clients, entering data into a computer, and resolving related problems. She worked in the Call Center, which was a large room accommodating twelve teams of eight people. Each team worked together to service groups of clients.

Plaintiff's team was managed by Kathy Howell, a Team Leader, who handled day-to-day supervisory tasks. Howell's supervisor was Sherri Herron, a Resource Manager. Herron reported to John Ayala, the Director of the Call Center. In turn, Aya-

---

**1.** The parties have consented to proceed before the Magistrate Judge pursuant to Title 28, United States Code, Section 636(c) and Fed.R.Civ.P. 73.

la reported to Joyce Lohse, the Vice President of Operations, whose supervisor was David Varnadore, the Senior Vice President of Operations. Jules Kortenhorst, the Vice President of Staff Leasing, was Varnadore's supervisor. Defendant's Vice President of Human Relations was Susan Dupper.

Howell rated Plaintiff's job performance as "above average" in reviews conducted in November, 1995, and February, 1996.

In April or May, 1996, rumors began to circulate throughout the Call Center that plaintiff was having an affair with Ayala. Plaintiff complained to Herron about the rumors. Howell states that she told plaintiff's co-workers to stop circulating and discussing the rumors.

Herron states that several weeks after the rumors surfaced, Howell informed her that plaintiff had related information about Herron's performance which appeared to have come from Ayala. Herron reported this information and the rumors of the affair to Lohse.

Dupper and Kortenhorst investigated the rumors of the affair. When plaintiff was questioned, she denied the affair but admitted that she had engaged in "mild flirting" with Ayala. Dupper and Kortenhorst concluded that the rumors of an affair between plaintiff and Ayala were unsubstantiated.

On June 25, 1996, Herron and Lohse provided plaintiff with a written warning identifying performance problems dating back to April 1996. The warnings were based on claims that plaintiff had failed to call clients (although she had documented that work), improperly answered and transferred calls, handled fewer calls than her co-workers, and took extended breaks and lunches. Herron claims, but plaintiff disputes, that she told plaintiff that this warning was confidential.

The following day, June 26, plaintiff received a written warning for discussing the warning of June 25 with co-workers. Plaintiff also was reprimanded because co-workers had complained that she had checked data which had been entered into

the computer too slowly because she was engaged in a personal conversation at the time. Herron told plaintiff that this was her final written warning.

On June 28, 1996, plaintiff was reprimanded because, on June 27, she returned late from a break and then left her desk to make a phone call when she was scheduled to be working. Plaintiff was suspended without pay until July 4, 1996. During her suspension, plaintiff met with Kortenhorst to discuss the situation. Kortenhorst told plaintiff that she must return to work after her suspension, or in the alternative, resign, receive severance pay, and sign a release of claims. Plaintiff rejected this offer, and returned to work on July 5.

On July 23, 1996, Herron received a phone call from a client who complained about the Call Center and expressed dissatisfaction with the service provided by plaintiff. Later that day, Varnadore terminated plaintiff. Plaintiff was replaced by Ricki Shofter, a female.

## II. SUMMARY JUDGMENT STANDARD

Defendant moves for summary judgment, contending that plaintiff has failed to raise any genuine issue of material fact. *See* Rule 56, Fed.R.Civ.P. (1998). Summary judgment should be entered when the parties do not genuinely dispute any material fact and the moving party is entitled to judgment as a matter of law. *See id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608–09 (11th Cir.1991).

In other words, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. In such a situation, with respect to that element, "there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of

the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

To defeat a motion for summary judgment, the non-moving party may not rely on mere allegations but must raise "significant probative evidence" to withstand summary judgment. *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 835 (11th Cir.1998) (citation omitted).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

Plaintiff's Complaint sets forth four counts against defendant. In Count I, plaintiff alleges "sex discrimination" based on disparate treatment. Count II charges sexual harassment and retaliation. Count III alleges "termination." In Count IV, plaintiff realleges her claims in Counts I through III under the Florida Civil Rights Act of 1992.

Counts I and III appear to comprise a single claim of disparate treatment based on plaintiff's termination.[2]

### A. Disparate Treatment

■ Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex...." 42 U.S.C. § 2000e–2(a)(1). To prevail on an employment discrimination claim, a plaintiff must establish the defendant's intent to discriminate through either direct or circumstantial evidence. *See, e.g., Green v. School*

*Bd. of Hillsborough County,* 25 F.3d 974, 978 (11th Cir.1994).

Examples of direct evidence of intent are statistical proof of a pattern of discrimination, or evidence showing discrimination without the need for inference or presumption. *See e.g. Holifield v. Reno,* 115 F.3d 1555, 1561 (11th Cir.1997). If direct evidence is unavailable, a plaintiff may present circumstantial evidence of intent, which is evidence that merely suggests discrimination and requires the trier of fact to infer discrimination. *See, e.g., Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081–82 (11th Cir.1990).

If a plaintiff seeks to prove intent circumstantially, then the claim of discrimination is properly analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[3] and developed in subsequent cases. *See also Walker v. Mortham,* 158 F.3d 1177, 1183–1185 (11th Cir.1998) (discussing the *McDonnell Douglas* framework); *Holifield,* 115 F.3d at 1561–65 (reviewing an application of the *McDonnell Douglas* test at the summary judgment stage).

Under *McDonnell Douglas,* a plaintiff must first establish a *prima facie* case in order to create a presumption of discriminatory intent. *See Walker,* 158 F.3d at 1183. Then, the defendant has the burden of production to rebut that presumption by presenting a legitimate, non-discriminatory explanation for its employment decision. *See id.* at 1184; *Holifield,* 115 F.3d at 1564. If the defendant meets that burden, then the plaintiff must prove that defendant's articulated explanation is a pretext for discrimination. *See Walker,* 158 F.3d at 1184; *Holifield,* 115 F.3d at 1564.

A plaintiff will survive summary judgment if she can "undermin[e] the credibili-

---

2. Although plaintiff refers in her complaint to her suspension without pay (Dkt. 1 at ¶¶ 14, 27), the only adverse action she addresses in her response (and related affidavits) to the summary judgment motion is her termination.

3. Although *McDonnell Douglas* involved a claim of race discrimination, the *McDonnell Douglas* framework is applicable to sex discrimination claims. *See Walker v. NationsBank of Fla. N.A.,* 53 F.3d 1548, 1556 (11th Cir.1995).

ty of a defendant's explanation for its actions." *Arrington v. Cobb County,* 139 F.3d 865, 875 (11th Cir.1998). However, at trial, the plaintiff must "persuade the trier of fact that the defendant *intentionally* discriminated against her." *Walker,* 158 F.3d at 1184 (emphasis added).

■ In order to establish a *prima facie* case of sex discrimination based on circumstantial evidence, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) he or she was subjected to adverse job action; (3) the defendant treated similarly situated employees outside of the plaintiff's classification more favorably; and (4) the plaintiff was qualified for the position. *See Holifield,* 115 F.3d at 1562 (applying the *McDonnell Douglas* test in a race discrimination case where the plaintiff alleged he was treated differently because of race); *Andrade v. Morse Operations,* 946 F.Supp. 979 (M.D.Fla.1996) (applying the *McDonnell Douglas* test, with the requirement that plaintiff identify a similarly situated employee treated more favorably by defendant, in a sex discrimination case).

The parties agree that plaintiff, a female employee terminated by her employer, satisfies the first two requirements for establishing a *prima facie* case of sex discrimination. At issue is the third element of the *prima facie* case.

Both parties agree that "similarly situated" means "involved in or accused of the same or similar conduct," or "conduct of comparable seriousness." *See Holifield,* 115 F.3d at 1562–63. However, they dispute the definition of "same or similar conduct" for purposes of this case.

Defendant, relying on *Holifield,* contends that "same or similar conduct" means the conduct identified by defendant as the reason it fired plaintiff. Plaintiff, however, argues that "same or similar conduct" should be more narrowly defined to include persons who were rumored to be having affairs.

However, it is unnecessary for the court to decide this issue as plaintiff has failed to set forth sufficient disputed facts to meet either definition of "same or similar conduct."

Plaintiff argues that she was terminated because of rumors of her alleged affair with Ayala. She identifies male[4] employees who were rumored to be having affairs who were not fired, and argues that she was treated differently because she was fired. Consequently, plaintiff asserts that she has established the "similarly situated" element of her *prima facie* case.

With respect to similarly situated employees, plaintiff contends that Paul Webb was rumored to be having an affair with Betsy Pier, and that John Hail was rumored to be having an affair with Sharon Slocum. She argues that Webb and Hail were treated differently because their work performances were not investigated and did not create a basis for reprimands, and the rumors about them were not investigated. Plaintiff also contends that these employees shared the same supervisor because they were under the control of the same upper management.

■ Viewing the evidence in the light most favorable to plaintiff, plaintiff is unable to show that she was treated differently from Webb and Hail. Her claims that she was the victim of "covert" investigations by defendant, and that Webb and Hail were not, are conclusory. *See, e.g.,* Dkt. 58 at 13, 19; Dkt. 58 at 4 (citing evidence of covert operations); Ayala Aff. at ¶ 34; Forster Aff. at ¶¶ 58, 59.[5] Her

---

4. Plaintiff contends that she is a member of a protected class because she is female. Therefore, to establish her *prima facie* case, she must identify males (as persons outside of the female class) who were treated differently. *See Shumway v. United Parcel Serv.,* 118 F.3d 60, 64 (2d Cir.1997).

5. In a separate order, this court granted in part and denied in part defendant's motion to strike portions of each of the affidavits submitted by plaintiff in response to defendant's motion for summary judgment. That order explains the basis for this court's finding that much of the evidence provided by plaintiff is conclusory.

claim that she was terminated because of the rumors, (which is discussed below with respect to pretext), and that Webb and Hail were not, fails for the same reason.

Lastly, even if plaintiff were treated differently from Webb and Hail, that evidence would not support a finding of sex discrimination. Two women, Slocum and Pier, were rumored to be having affairs with Webb and Hail. However, these two women were treated exactly the same as Webb and Hail because, according to plaintiff, nothing happened to them as a result of the rumors.

Accordingly, plaintiff may not rely on Webb and Hail as similarly situated persons to establish the third element of her *prima facie* case.

Plaintiff also claims that Ayala was "similarly situated" because he was also rumored to be having an affair. Defendant does not dispute that plaintiff and Ayala were supervised by the same upper management. However, plaintiff's argument fails because she cannot show that she was treated less favorably than Ayala.

First, as with Webb and Hail, plaintiff's contention that she was investigated and Ayala was not investigated is conclusory. *See, e.g.*, Forster Aff. at ¶ 53.

Second, plaintiff's argument that she was treated less favorably because she was fired and Ayala resigned voluntarily fails. Her claim that she was terminated because of the rumors is, as explained below, insufficient to create a genuine issue of fact for trial.

Nevertheless, even if plaintiff could show that she was terminated because of the rumors, the evidence would not show that Ayala was treated more favorably than plaintiff. According to plaintiff, Aya-

la voluntarily resigned because his supervisor, Lohse, acted unprofessionally in response to the rumors of the alleged affair.[6]

The distinction between plaintiff's alleged situation (that she was terminated because of rumors of an affair after having decided not to resign or accept severance pay) and Ayala's alleged situation (that he resigned, accepting severance pay, because he found his employment situation intolerable because of rumors of an affair) is insignificant and would not support a finding that plaintiff was treated less favorably than Ayala. *Compare Shore v. Federal Express Corp.*, 589 F.Supp. 662, 667 (W.D.Tenn.1984) (holding that defendant's action of firing a female employee involved in an affair but not disciplining the male reflected a double standard which evidenced sex discrimination), *aff'd*, 777 F.2d 1155 (6th Cir.1985).

Defendant claims that it terminated plaintiff because of her performance deficiencies and insubordination, specifically demonstrated by numerous complaints received from plaintiff's co-workers and clients.[7] *See* Dkt. 31 at 26–27. Plaintiff does not attempt to identify a single similarly situated male who engaged in a single act of work performance deficiencies similar to, or as serious as, any of those cited by defendant as grounds for plaintiff's termination. Therefore, under defendant's interpretation of "same or similar conduct," plaintiff has not met her burden in establishing a *prima facie* case for summary judgment purposes.

In summary, regardless of how "same or similar conduct" is defined, plaintiff is unable to establish the third element of her *prima facie* case. Thus, her claim of sex discrimination fails and it is unnecessary to

---

**6.** Defendant disputes this claim, and states that Ayala was told that if he did not resign, he would be terminated. According to defendant, Ayala was asked to resign because, as a result of the rumors, he was no longer an effective manager. *See* Lohse Aff. at ¶ 13.

**7.** While defendant denies that plaintiff's termination had anything to do with the rumors

about her alleged affair with Ayala, it does not deny that Ayala left the company because of the rumors. If anything, the record shows that defendant treated Ayala, a male, more harshly than plaintiff with respect to the rumors of their alleged affair, which both Ayala and plaintiff denied.

examine the fourth element of a *prima facie* case or the issue of pretext. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that a failure of proof regarding a required element of a case necessarily renders all other facts immaterial, and further analysis unnecessary). *See also Hawkins v. Ceco Corp.,* 883 F.2d 977, 985 (11th Cir.1989) (stating that a court need not examine whether defendant's reasons for discharging plaintiff are pretextual if it determines that plaintiff has failed to establish a *prima facie* case).

However, even if plaintiff were able to establish a *prima facie* case under *McDonnell Douglas,* her sex discrimination claim would ultimately fail because she is unable to show that defendant's articulated reason for firing her is pretextual.

Under *McDonnell Douglas,* once a plaintiff establishes a *prima facie* case of sex discrimination, the burden shifts to defendant to rebut plaintiff's *prima facie* case by "articulating a legitimate nondiscriminatory reason for the adverse employment decision of which the plaintiff complains." *Walker,* 158 F.3d at 1184.

■ Defendant states that it terminated plaintiff because she failed to perform certain tasks required of a person in her position, that she misrepresented that she had performed certain tasks, and that she violated company policy with respect to lunches and breaks.[8] This meets defendant's burden of production.

In rebuttal, plaintiff is required to present facts to create a genuine issue of fact as to whether defendant's articulated reason for terminating her is pretextual. *See Holifield,* 115 F.3d at 1565. Plaintiff claims that defendant actually fired her because of the rumors, and that defendant's articulated reason for firing her is a pretext.

Plaintiff has not met her burden because the evidence upon which she relies is largely conclusory. *See, e.g.* Dkt. 58 at 13–15; Plaintiff Aff. at ¶41, 56, 73, 80, 85; Ayala Aff. at ¶¶22, 23, 37, 39, 48, 54; Ayrton Aff. at ¶21; Barkman Aff. at ¶24, 33, 45, 46; Forster Aff. at 28, 52, 53.

Even if the evidence upon which plaintiff relies were not conclusory, it would be insufficient to show that defendant's asserted reasons for its actions were a pretext. Defendant has cited numerous examples of plaintiff's misconduct which it claims justified her dismissal.

Further, plaintiff admits that she engaged in some of the actions cited by defendant, and merely argues that defendant did not typically fire employees for these actions. As for the conduct which plaintiff denies, she does not claim that defendant does not believe that plaintiff engaged in that conduct. Rather, she argues that, with respect to complaints about plaintiff from clients and co-workers, defendant relied on hearsay or did not fully investigate. However, this court "[does] not sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir.1991) (citation omitted). *See also Nash v. Consolidated City of Jacksonville, Duval County,*

---

**8.** Specifically, defendant states that it fired plaintiff because of the following acts of misconduct: plaintiff did not call clients to gather payroll information but falsely recorded that she did; she did not want to call clients for payroll information; she transferred calls to co-workers without explaining information obtained at the start of the call, in violation of company policy; she told co-workers to put clients directly into voice-mail, in violation of company policy; she refused to take a client call; she took a lower volume of calls than other employees; she took an excessive amount of time on lunch and breaks; she would not help a co-worker check a register, as required by her position; she put an urgent call into voice-mail; she told other employees about a conversation she had with Lohse, in violation of Lohse's instructions that the conversation was confidential; she took an excessive amount of time to check a register; she returned late from a break and then left her desk to make a phone call from another location; and, she told a co-worker to put a client into voice-mail, in violation of company policy and in disregard of the client's request to speak with plaintiff. *See* Dkt. 31 at 4–9.

*Fla.,* 895 F.Supp. 1536, 1555 (M.D.Fla. 1995) (stating that "Title VII does not vest federal courts with the power to sit as review boards for every personnel decision").

The essence of plaintiff's argument is that she was terminated by defendant because of the rumors of an affair between her and Ayala, and not because of problems with her performance. Nevertheless, even if this were true, given the facts of this case, it would be insufficient to prove, or raise an inference of, intentional sex discrimination sufficient to withstand summary judgment.

In conclusion, plaintiff's claim of disparate treatment fails to survive summary judgment. As she cannot show that she was treated differently from similarly situated persons, she is unable to establish a *prima facie* case of sex discrimination. Moreover, even if plaintiff were able to establish her *prima facie* case, she has not advanced sufficient evidence to cast doubt on defendant's articulated reason for her termination. Accordingly, defendant is entitled to summary judgment on Counts I and III of plaintiff's complaint.

## B.  Sexual Harassment

■ Plaintiff contends, in Count II of her complaint, that defendant's actions amounted to sexual harassment. Under Title VII, a plaintiff may establish a claim of sex discrimination by showing sexual harassment. *See, e.g., Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982). Plaintiff states that her claim of sexual harassment is based "solely upon a sexually hostile work environment." Dkt. 58 at 18.

■ A claim of sexual harassment based on a sexually hostile work environment is established by a showing of discriminatory conduct so severe or pervasive that it creates a hostile work environment. *See Mendoza v. Borden,* 158 F.3d 1171, 1175 (11th Cir.1998); *Equal Employment Opportunity Comm'n v. Domino's Pizza,* 909 F.Supp. 1529, 1534 (M.D.Fla.1995), *aff'd,* 113 F.3d 1249 (11th Cir.1997), *cert.*

*denied,* —— U.S. ——, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998). Specifically, plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was so severe or pervasive that it altered the terms and conditions of employment; and, (5) there are grounds to hold the employer liable, either directly or indirectly. *Domino's Pizza,* 909 F.Supp. at 1534.

■ On the second element of her sexual harassment claim, in relating how she was harassed, plaintiff claims that she was harassed because Herron and Lohse instructed co-workers to "keep track of" plaintiff and that rumors about her were discussed at work. Dkt. 58 at 19.

Plaintiff's claim that Herron and Lohse instructed co-workers to "keep track of" her is conclusory. Moreover, even if this allegation were proved, plaintiff claims that defendant's actions were covert. It is unclear how plaintiff was "harassed" by those actions if she was not even aware of them.

With respect to the third element of her claim, plaintiff is unable to show that the alleged harassment was "because of" her sex. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998) (holding that a plaintiff claiming sexual harassment "must always prove that the conduct at issue . . . actually constituted 'discrimina[tion] . . . *because of* . . . sex' " (emphasis added)).

■ In support of her argument that she was harassed because of sex, plaintiff states that she was "resented" by coworkers but that Ayala was not, that she would have been treated differently if she had been a male friend of Ayala's, and that the actions for which she was fired were not serious enough to terminate her. These statements are unsupported conclusions, and do not tend to show that she was

discriminated against "because of" her gender.

Moreover, defendant points to evidence in the record that both plaintiff and Ayala, a male, were the subject of the rumors, and that both men and women were discussing them. Accordingly, the rumors do not show harassment "because of" sex. *See Pasqua v. Metropolitan Life Ins. Co.,* 101 F.3d 514, 517 (7th Cir.1996) (holding that rumors are non-discriminatory due to "the very nature of such gossip").

■ In addition, on the fourth prong of her claim, plaintiff has not shown that the harassment she suffered was severe or pervasive. Under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). *See also Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 647 (11th Cir.1997) (holding that severe and pervasive conduct is so "permeated with discriminatory intimidation, ridicule, and insult" that it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment") (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (citation omitted)).

■ This determination requires consideration of numerous factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher,* 118 S.Ct. at 2283 (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). The "conduct must be

extreme to amount to a change in the terms and conditions of employment." *Id.* at 2284. In making this determination, a court must look at the totality of the circumstances. *See Meritor Sav. Bank, F.S.B. v. Vinson,* 477 U.S. 57, 69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

■ Plaintiff fails to proffer significant probative evidence of severe and pervasive harassment. Her statements on this issue are, for the most part, conclusory.[9] Moreover, the evidence does not suggest that plaintiff subjectively viewed the environment to be hostile. For example, regarding the option of transferring within the company, plaintiff stated that she did not want to transfer because she "really wanted to stay where [she] was...." Plaintiff Dep. at 60. Regarding the meeting at which Kortenhorst asked her to resign, plaintiff stated that she "liked [her] job," "liked her co-workers," and "didn't want to resign." Plaintiff Dep. at 119.

Finally, on the fifth element of plaintiff's *prima facie* case, the parties dispute whether defendant would be liable for any harassment. However, as plaintiff's sexual harassment fails on other grounds, it is unnecessary to consider defendant's vicarious liability. *See generally Faragher,* 524 U.S. 775, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (setting forth the test for determining an employer's vicarious liability for sexual harassment).

Thus, for the reasons stated above, plaintiff's claim of sexual harassment set forth in Count II of her complaint fails to survive defendant's motion for summary judgment.

### C. Retaliation

■ Plaintiff also brings a claim of retaliation. A Title VII claim of retaliation is subject to the *McDonnell Douglas* bur-

---

9. Plaintiff states that Herron told plaintiff's boyfriend, Ayrton, who was also employed by defendant at the Bradenton office, about the rumors, and that Herron's actions affected plaintiff's relationship with Ayrton. Herron disputes this, stating that Ayrton approached her about the rumors, and that she refused to discuss them with him. Viewing the evidence in the light most favorable to plaintiff, this incident, however unjustified in plaintiff's view, does not rise to the level of the type of extreme conduct required to establish a hostile work environment claim.

den shifting analysis conducted in Title VII discrimination cases. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1162–63 (11th Cir.1993), *aff'd* 47 F.3d 431 (11th Cir.1995).

■ The *prima facie* case of retaliation is shown by evidence that: (1) the employee engaged in protected activity; (2) the employee suffered adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir.1998) (citing *Meeks v. Computer Assocs. Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994)).

■ As in sex discrimination cases, once a *prima facie* case of retaliation is established, the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Olmsted,* 141 F.3d at 1460. Ultimately, the plaintiff must prove "by a preponderance of the evidence" that the employer's reason for the adverse action taken against plaintiff is a pretext for retaliatory conduct. *Id.*

■ On the first prong of a retaliation claim, an employee engages in protected activity if she opposes a practice made unlawful under Title VII (pursuant to the opposition clause), or makes a charge, testifies, assists or participates in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). *See Clover v. Total Sys. Servs., Inc.,* 157 F.3d 824, 827 (11th Cir.1998).

■ A plaintiff can establish a *prima facie* case of retaliation under the opposition clause if she shows that she had a good faith reasonable belief that the employer was engaged in unlawful employment practices. A plaintiff's burden has both a subjective and an objective component. *See Little v. United Technologies,* 103 F.3d 956, 960 (11th Cir.1997). "A

plaintiff must not only show that [s]he *subjectively* (that is, in good faith) believed that (her) employer was engaged in unlawful employment practices, but also that [her] belief was *objectively* reasonable in light of the facts and record presented." *Id.* (emphasis in original).

■ Plaintiff presents no evidence that she participated in a formal complaint procedure under Title VII. Her contention that her complaints about the rumors were the equivalent of opposition to unlawful sex discrimination, sexual harassment, or retaliation is conclusory. Furthermore, her complaints about the rumors would not place an employer on notice that an employee was complaining about an unlawful employment practice under Title VII.

Moreover, plaintiff complained only about rumors, and those rumors also involved a male employee. *See, e.g., Pasqua,* 101 F.3d at 518 (denying defendant's retaliation claim where he complained about rumors of an affair where the evidence failed to show that rumors were based on disparate consideration of the male and female involved). Even if plaintiff subjectively believed that rumors of her alleged affair indicated that defendant was engaged in an unlawful employment practice, she has not set forth significant probative evidence that her belief was objectively reasonable in light of the circumstances.

To the extent that plaintiff contends that her refusal to sign a release of claims form constituted opposition to an unlawful employment practice, her argument is also without merit. *See generally Crabbs v. Copperweld Tubing Products Co.,* 114 F.3d 85, 88–89 (6th Cir.1997) (defendant's offer of severance package in exchange for a waiver of rights was not evidence of discrimination). On the facts of this case, defendant's request that plaintiff sign a release of claims is not evidence of unlawful sex discrimination.[10]

---

10. As plaintiff fails to show that she engaged in protected activity, this court shall not address whether plaintiff could show any causal connection between the adverse action she

suffered and the activity she claims is protected.

However, assuming *arguendo* that plaintiff had engaged in protected activity by refusing

Consequently, as plaintiff is unable to establish that she engaged in any protected activity, defendant is also entitled to summary judgment on plaintiff's retaliation claim.

### D. FLRA Pendent State Claims

Plaintiff alleges violations of the Florida Civil Rights Act in Count IV. She and defendant agree that the FLRA claims are identical to the Title VII claims. Therefore, defendant is entitled to summary judgment on plaintiff's FLRA claims as well.

### IV. CONCLUSION

Accordingly, defendant's motion for summary judgment is **GRANTED** on all counts of plaintiff's complaint.

The Clerk of Court is instructed to enter judgment accordingly.

to sign a release of claims, she would be unable to show a causal connection between her refusal to sign and her termination. Plaintiff received two written warnings and was suspended without pay before she was terminated. Those warnings and suspension occurred prior to her refusal to sign a release, and therefore, could not have been in retaliation for her refusal to sign. The warnings and suspension were part of a chain of events which led up to plaintiff's termination. Thus, the termination was not causally connected to plaintiff's refusal to sign the release of claims.